FRANK LUNZ v. ESTATE OF MARY SANDMEIER.[1]

September 30, 1927.

No. 25,894.

**Definition of section centers in government survey.**

1. Government surveys do not mark section centers. The center of a section is the intersection of a straight line from the north quarter corner to the south quarter corner with a straight line from the east quarter corner to the west quarter corner.

**Evidence insufficient to locate center of section or boundary line.**

2. The evidence does not show that a stone monument claimed to mark the center of a section was at the center and that a straight line from the north quarter corner to the monument was the boundary between the northeast and northwest quarters; nor does it show that adverse possession or practical location made such line the boundary.

Boundaries, 9 C. J. p. 155 n. 41 New; p. 343 n. 92.

See 4 R. C. L. 116 et seq.; 1 R. C. L. Supp. 1065; 5 R. C. L. Supp. 228.

The representatives of Mary Sandmeier appealed from an order of the district court for Watonwan county, Comstock, J., denying their motion for a new trial. Reversed.

*J. L. Lobben* and *J. W. Seager,* for appellants.
*Farmer & Tighe,* for respondent.

DIBELL, J.

The plaintiff, Frank Lunz, appealed to the district court of Watonwan county from an order of the probate court disallowing his claim for expenses incurred in building a line fence between his land and land formerly owned by Mary Sandmeier, now deceased. Issues were framed in the district court and upon trial there was a directed verdict for the plaintiff. The representatives of Mary Sandmeier appeal from an order denying their motion for a new trial.

[1] Reported in 215 N. W. 426.

The plaintiff is the owner of the east one-half of the northwest quarter of 4-106-32 in Watonwan county. The deceased was the owner of the west half of the northeast quarter of the same section. The town supervisors, acting under the provisions of G. S. 1923, § 7248, et seq. directed that the plaintiff build the north half of the line fence between the two 80s and that Mary Sandmeier build the south half. She failed to do so. The plaintiff built a fence claimed to be on the south half of the boundary line. If it is, he is entitled to reimbursement.

The proceedings before the supervisors were regular. The only question is whether the fence built by the plaintiff is on the line between the two 80s. This involves a question of the location of the government section corners and quarter corners and the center of the section.

1. The government does not establish the center of sections. The center is the intersection of a straight line from the quarter corner at the north to the quarter corner at the south with a straight line from the quarter corner at the east to the quarter corner at the west. R. S. §§ 2396, 2397; Beardsley v. Crane, 52 Minn. 537, 54 N. W. 740; Clark, Surv. & Bound. § 59.

2. The record shows, indefinitely as to detail, prior litigation between the owners of the two 80s as to the common boundary line. By a judgment of 1923 it was adjudged that the boundary line was a line commencing at a point 2,559.5 feet west of the corner stone at the northeast corner of section 4 and thence running south 160 rods to the center of the section. In the findings upon which this judgment was rendered it is found that in an action pending in 1891 the boundary between the two 80s was adjudged to be a line commencing at a point 160 rods and 6 links east of the northwest section corner of section 4, thence south 160 rods to the southeast corner of the northwest quarter. The point of commencement on the line north of the two 80s was ascertained in the first action by commencing at the northwest quarter section corner and in the other by commencing at the northeast section corner. There is no dispute as to the location of the northeast quarter section corner.

Under the evidence there is nothing to impeach the stone monument at the northwest corner, placed there about 1872, as the government quarter corner. Nor can there be a fair question, as we understand the evidence, that the line mentioned in the judgment in the 1891 action, running east 160 rods and 6 links from the northwest quarter section corner, and the line mentioned in the 1923 judgment, running 2,559.5 feet west from the northeast section corner, met at a stone monument which was the established government quarter corner on the north line of the section and which is still there.

It cannot be said that the center of the section, which is a common corner of the two 80s, was determined. Some 2,240 feet southerly of the starting point at the quarter corner on the north line there is a stone monument put there in a surveyor-like manner about 1872 by one Clark, and there is evidence that it was used as the center of the section by neighboring owners. In 1902 Gove placed a monument about 42 feet west of it. He claims that the monument he placed for the center of the section followed the rule stated for fixing the section center. Meyer, in making his survey, adopted the stone monument 42 feet east of the point claimed by Gove to be the center. Both of the actions mentioned contemplated that the boundary line should start at the north quarter corner and go to the center of the section. That was a point to be ascertained. The distance of 160 rods south was wrong, for the quarter was short, but whatever the distance, it was intended to reach the center which was the common south corner point for both 80s. The two judgments are binding; but they leave the boundary unlocated on the ground.

The 1923 judgment may have determined title by adverse possession so as to give plaintiff the land he claims regardless of the true boundary; but still the actual limits of his adverse possession are not shown; nor is a practical location shown; nor is it shown that independent of any judgment adverse possession or practical location settles the controversy. As we have stated before, we are unable to see how it can be held, under the evidence presented, that the north quarter corner, evidenced by the stone monument, was

not in harmony with the measurements from the northeast section corner and from the northwest section corner, and the true north starting point of the boundary line between the two 80s. The present trouble, taking the evidence just as it is, is that there is no definitely located true center of the section.

Order reversed.

The Chief Justice took no part.